[Civ. No. 8790. Third Dist. Oct. 29, 1956.]

WINIFRED R. CODMAN et al., Respondents, v. FAIR OAKS IRRIGATION DISTRICT et al., Appellants.

Bradford, Cross, Dahl & Hefner and Driver, Driver & Hunt for Appellants.

Lewis, Lewis & Lewis for Respondents.

VAN DYKE, P. J.—This is an appeal by the defendants from a judgment which enjoined the Fair Oaks Irrigation District and its directors from paying any part of an indebtedness allegedly due Armco Drainage and Metal Products, Inc., and ordering the district to restore to Armco certain irrigation pipe and accessories which the district claimed to have purchased from Armco but which had not been used.

In the spring of 1951 the district found that there was an urgent need for extensive replacement of sections of its irrigation system. At that time the sale of steel pipe and accessories was regulated by the federal government. Suppliers of such material could not sell freely and could not commit themselves to fill orders. Prices were controlled and vendors could not contract for prices on future deliveries. The district itself was subject to contractual limitations by certain provisions of the Water Code. The directors of the district conferred with representatives of Armco about the purchase of pipe. Each side was aware of the difficulties facing the other. There is no substantial variance in the testimony of the men present at the conference as to what was discussed and as to what arrangements were made. It was understood that Armco could make no definite commitments to furnish any pipe and could not undertake affirmatively to fill any orders that might be placed in the future. But, Armco did agree to furnish pipe to the district as and

when they could at prices to be fixed when deliveries were made, and it was agreed that the usual credit arrangements prevailing in the area would be followed, that is, 2 per cent discount if paid within 10 days, net 30 days, and 4 per cent interest on any balance which was not paid in 30 days. The directors told Armco that they had a five-year plan for the replacement of pipe which was no longer serviceable. The district intended to do the work through their own maintenance crews and told Armco that orders would be placed as the directors should decide. All concerned knew of the limitations placed upon the district in making purchase contracts, particularly the provisions of sections 24250 through 24253 of the Water Code. It was the consensus that the district would have to make payments when, as one witness said, "it legally could." No further discussions were held, but commencing in August of 1951 and terminating in January of 1952 the district placed 21 orders with Armco which were filled. Each shipment was separately billed. The total purchases amounted to $43,007.40. Up to the time judgment was entered herein no payments had been made nor had Armco made a demand for payment. Some $24,000 worth of the materials delivered to the district had been used and the balance remained stockpiled in the district's yards.

In June of 1952 the respondents, as residents of, and taxpayers in the district, brought this action. They alleged that the district and Armco had purportedly entered into a contract, under the terms of which Armco was demanding $43,-007.40; that when the contract was made the district did not have appropriate funds sufficient to meet the payments thereunder; that no assessment had been authorized; and that the contract had not been approved by the Districts Securities Commission. Respondents asked the court to declare the contract illegal and to restrain the issuance of warrants in payment of the purported debt.

After the suit was filed, the district initiated proceedings before the Districts Securities Commission in accordance with the provisions of section 24253 of the Water Code. This section provides that:

"If the largest payment to be made under any one lease or contract for any property exceeds in any year an amount equal to one-fourth of 1 percent of the total valuation of the land in the district according to the assessment next equalized before the making of the lease or contract, the lease or contract shall not be valid unless either:

"1. The district has appropriate funds on hand at the time the lease or contract is made, sufficient to meet all payments to be made thereunder and in excess of the district's normal requirements for the period in which the payments are to be made; or,

"2. Unless a particular purpose or emergency assessment sufficient to meet all of the principal payments to become due under the lease or contract is authorized; or,

"3. *The lease or contract is approved by the Districts Securities Commission.*" (Italics added.)

During the period which is material here the assessed valuation of land in the district was $400,000, and therefore any contract or lease which called for a payment in any one year in excess of $1,000 would be invalid unless it was validated under one of the provisions of the section referred to.

It is patent that if, as the trial court found, the entire amount of the indebtedness arose out of a contract which was made during the conference previously referred to, such a contract was invalid unless section 24253 was complied with. It is equally patent from the findings as to the amounts of the various orders which were filled that if they be considered as separate contracts many would be within the requirements of the section. It is conceded that if the contract or contracts are valid they can only be so because the commission approved them since neither of the other alternatives was followed.

The legislation under review possesses certain characteristics that are important. Unlike many constitutional and statutory limitations placed upon the incurring of debts by various public agencies, this legislation does not purport to limit the total debt which an irrigation district may incur. The legislation has to do only with contracts concerning the acquisition or the leasing of property for district uses. The right to contract or lease is given expressly. No total limitation of district debts so to be incurred is provided. ▉ By the plain wording of section 24253 the district, in the discretion of its board of directors, is free to pledge its credit to any total amount, for any period of time, so long as payments to be made in any one year do not exceed the designated amount. The section does not limit the number of contracts which may be so made. ▉ So far as validation by approval of the commission be concerned, the legislation contemplates that such approval may be asked as to a contract in question after the parties have executed it. In such a case, the approval of the commission, if obtained, has the effect of validating a con-

tract already made, but which, for its effectiveness, requires such approval. The legislation does not specify the time within which such approval may be applied for and accorded.

After the suit was filed, on November 15, 1952, the district filed an application for approval with the commission which recited that the district was indebted to Armco in the amount of $43,007 and to the Sacramento Pipe Company for $13,000 for pipe which had been purchased for the purpose of making necessary replacements in the irrigation system. It was stated that a taxpayer's suit had been filed in connection with the Armco obligation and all orders of the court made in that action were referred to. The application asked for permission to enter into new contracts with Armco and Sacramento Pipe Company covering the indebtedness. The application asked also for permission to issue warrants partly for the purpose of satisfying the outstanding indebtedness and partly for the purpose of finishing the replacement program. After a thorough investigation the commission authorized the issuance of warrants in the amount of $100,000 for the payment of the debts and for the completion of the replacement project.

By appropriate pleadings the action of the commission was brought to the attention of the court before the court proceedings were concluded. Appellants herein then contended that any invalidity in the contractual relations between Armco and the district was obviated by the action of the commission, with the legal result that the court could not restrain the payment of the indebtedness to Armco. However, the trial court refused to stay its hand and entered judgment against the district.

We are of the opinion that the trial court erred. It is apparent that the commission, by approving the payment of the debt to Armco, impliedly approved the prior contractual arrangement between the district and Armco out of which that debt arose. It is this court's opinion that the statute requiring approval of contracts such as here involved was sufficiently complied with whether the Armco-district transaction resulted in one or 21 contracts, and that between the beginning of this action and the rendition of the judgment appealed from the affair had been cleared up, the contractual relations validated, and the payment of the debt provided for. As a result, the situation had reached a stage whereby the court should have stayed its hand and dismissed the action as having become moot. In our view, it was error to enter any judgment other than one of dismissal.

Accordingly, the judgment appealed from is reversed, with directions to the trial court to enter a dismissal of the cause.

Peek, J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied November 21, 1956, and respondents' petition for a hearing by the Supreme Court was denied December 27, 1956. Carter, J., was of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.